GEORGE W. McGUIRE, STATE DAIRY COMMISSIONER, v. CHARLES DOSCHER.

Submitted March 15, 1900—Decided June 11, 1900.

1. The courts of police justices, organized under the "Act to provide for the appointment of police justices in cities of the first class," passed May 18th, 1894, have jurisdiction of complaints for violation of the Oleomargarine act, approved March 22d, 1886, notwithstanding the District Court act of June 14th, 1898.
2. The proviso in the supplement to the Oleomargarine act, approved March 25th, 1895, does not abrogate the regulations prescribed in the original act with regard to sales of oleomargarine.

On *certiorari* to the First Criminal Court of Jersey City.

Before Justices DIXON, LUDLOW and COLLINS.

For the prosecutor, *William I. Lewis.*

For the defendant, *John Griffin.*

The opinion of the court was delivered by

DIXON, J. This writ brings up proceedings instituted by the state dairy commissioner in the First Criminal Court of Jersey City to recover a penalty for violation of section 4 of the Oleomargarine act, approved March 22d, 1886. *Gen. Stat.,* p. 1164. On motion of the defendant that court dis-

missed the proceedings for a supposed lack of jurisdiction, and whether the court had jurisdiction is the first question here presented.

The defendant does not deny, and it is clear that the court once had jurisdiction over such causes. Section 10 of the act confers authority to try complaints for violation of the act on "every justice of the peace in any county," and section 3 of the supplement, approved March 7th, 1895, to "An act to provide for the appointment of police justices in cities of the first class" (*Gen. Stat., p.* 2494), gives to the courts of such police justices "all the powers, authority and jurisdiction * * * of the justices of the peace in and for the several counties of this state, except such as are conferred upon the said justices of the peace" by certain statutes thereinafter particularly mentioned, among which the Oleomargarine act is not designated. By force of these two statutes the courts of the police justices of Jersey City, which is a city of the first class, acquired jurisdiction of such complaints as that now before us.

But the defendant contends that this jurisdiction was taken away by the District Court act of June 14th, 1898. *Pamph. L., p.* 556.

That act (section 30) confers jurisdiction on the District Courts over "every suit * * * to recover any penalty imposed or authorized by any law of this state, where the * * * penalty * * * does not exceed * * * three hundred dollars," and (section 31) forbids any justice of the peace, resident within the limits of any city where a District Court is or may be established, to exercise any civil jurisdiction whatever. Actions for penalties being civil actions (*Brophy v. Perth Amboy,* 15 *Vroom* 217; *Cahill v. Pennsylvania Railroad Co.,* 27 *Id.* 445), they were included in this prohibition.

The argument for the defendant is that the act of 1895, conferring on the city criminal courts the jurisdiction of justices of the peace, should be construed as passed in contemplation of not only the then existing condition of things, but also whatever changes might thereafter take place in the jurisdiction of justices of the peace, so that when such juris-

diction was enlarged or curtailed, the jurisdiction of the said courts would be correspondingly altered.

There is nothing in the words of this statute to indicate that legislative intent, and I know of no rule leading to such a construction in the absence of words suggesting the purpose. The general doctrine is that statutes are passed with full knowledge, on the part of the legislature, of all existing laws on the same subject, but it cannot be presumed that the effect of future enactments is anticipated. This roundabout method of abolishing the jurisdiction of the city courts cannot be sanctioned. And certainly the District Court act of 1898 does not suggest any design to interfere directly with their authority. Under the doctrine just stated we must assume that the legislature, when passing that act, had in mind the jurisdiction of those courts as well as that of justices of the peace, and the inference rationally follows that the express abridgment of the latter indicates the full scope of the legislative design.

The defendant further insists that, by force of the proviso in the supplement to the Oleomargarine act, approved March 25th, 1895, it has become lawful to sell oleomargarine in any "manner which will advise the consumer of its real character," and that the present complaint is bad, because it does not aver that the sale complained of was otherwise made.

This contention is groundless. The proviso clearly indicates that sales of oleomargarine were still to be regulated by the former act. The supplement seems to be applicable only when the substance manufactured, sold or possessed has been artificially colored in imitation of yellow butter, while the presence of such coloring is not required for the operation of the original act.

Lastly, it is insisted that the prosecutor should have been left to exercise his right of appeal to the Quarter Sessions. This consideration would have been more strongly addressed to the justice of this court who allowed the *certiorari,* but on final hearing it should not prevail.

Let the judgment of the criminal court be reversed, and the cause be remanded to that court for further proceedings, according to law.